The court will call the case please. 3-13-03-97. People of the State of Illinois. Appellee by Thomas Arado v. Demetrius Jones. Appellant by Mario Clattis. Mr. Clattis. Good afternoon, your honors, counsel. May it please the court. I'm Mario Clattis, Assistant Appellate Defender with the Office of the State Appellate Defender, and I represent the defendant, Appellant Demetrius Jones. Mr. Jones was convicted of first-degree murder, attempt murder, and aggravated unlawful use of a weapon after a jury trial, and he was sentenced to 83 years in prison. The trial was televised under the Supreme Court's new expanded media coverage program. On appeal, Jones has argued four things. First, that he was denied the effective assistance of counsel and a fair trial by the audio pickup that was used in court, that he was denied a fair trial by the attempt murder instructions, which didn't specify the victim in the case, and by the court's response to the jury's question about the intent to kill for attempt murder. Jones has also argued that his sentence was excessive and that his conviction for aggravated unlawful use of a weapon was invalid. Today I'm going to be focusing on the first and second arguments, or actually on the first argument. If I'm permitting, if I can address the second argument, I will try to. If the court has any questions about the third and fourth arguments, I will also try to answer those questions. So, Jones' trial was actually the first criminal trial in the state that was televised under this new program. The guidelines for the program explicitly prohibited any recording or broadcasting of any conversations, not only between Jones and his attorneys, but between his attorneys. The audio pickup in the case impeded his ability to communicate with counsel during trial, and that impediment denied him both the effective assistance of counsel and a fair trial. That's pretty speculative to say that, isn't it? I mean, what was captured was very... I mean, how could you ever show even prejudice for what was captured? The issue isn't what was captured, it's the fact that because counsel knew there was this possibility of being recorded and having their private conversations broadcast, she refrained from discussing things with Jones that ordinarily she would have. So, the issue is that she didn't say things she could have, and we wouldn't expect... because of the camera in the room, because of the audio pickup, that again is picking up stuff we know for a fact from the record that the audio pickup itself could record even her whispering to Jones. You know, through most of the trial, she indicated to the court once she became aware of the problem, she told Jones to limit what he said to her and counsel in court. She herself limited to what she said to Jones during trial. And at the end of the trial, basically when she lets her guard down during jury deliberations, she's whispering to him in court, and you can hear her asking him pretty clearly, you know, whispering, you know, are you nervous? So it's... I don't know that I would say it's speculative if she's arguing that I didn't talk. And if she didn't talk, there wouldn't be evidence of her talking. I mean, the court sort of... I would say there's no indication from her that any attorney-client confidential conversation was ever compromised. Again, she's telling the court, her argument is I didn't talk. You know, when we have the defendant in court, the prime benefit the defendant gets from that is being able to confer with counsel, being able to participate in his defense by conferring with counsel during the trial. It's not enough that, you know, she told the court at jail each morning, we were able to speak with each other, you know, in that regard they weren't impeded at all. But in the courtroom while the trial is happening, in between breaks when she might be able to ask questions, the media is there, this audio feed is picking things up, the prosecutor didn't dispute this. The second time she brought it to the court's attention, the prosecutor actually indicated that it seemed that the news feed was staying live during the breaks. And this is after the court had warned the media. I mean, the media knows the rules because they've been told at the outset. They've then again been told apparently after counsel complains about it the first time, and even still the prosecutor notes the news feed seems to be staying live in between breaks, which is something that's explicitly prohibited in these guidelines. What explicitly was stated as the problem? In any of the recorded conversations? The problem is that she didn't speak with her client during the trial. She refrained from communicating with him during the trial. What did she fail to say? She tried to explain to the court the types of conversations that were initially picked up. You know, witnesses were testifying. She didn't want to reveal anything private. She told the court, I wanted to ask him questions about what this witness was saying, where he was, et cetera. And some of it might have been incriminating. She tried to explain to the court what types of conversations were initially broadcast. And then at some point she realizes this is still happening and starts to not talk, starts to not ask him questions and tells him, watch what you say in court. Don't say anything that might incriminate you. I mean, I don't know what she could show. The argument is she's impeded. She never made any objection at all about doing anything about this. I mean, isn't this forfeited? No, I don't believe so, Your Honor. She complained about it twice to the judge. The first time she tells the judge, the media is, this audio pickup is picking stuff up between myself and my client during the breaks. It's being broadcast. The judge says, well, it's nothing. I don't think we really need to address it. The next day she comes back to court and says, Your Honor, you know, maybe I'm doing something wrong. There's some kind of button she has that maybe is supposed to cut off the audio feed. It's not clear. She thinks maybe I'm doing something wrong, but they're still recording. They're still picking these things up. And the judge says, well, you know, we've warned them not to do this. I mean, the judge was clear. They're not supposed to be doing this. They're not supposed to record anything between you and your client. They're not supposed to be recording during the breaks. There's, I believe, an administrative personnel. Did she object to the recording at all? Did she say stop the recording? I object. She did not object to the program being employed in this case. It's not, the issue isn't that counsel wanted the expanded coverage to stop altogether. It's that she wanted the rules to be enforced. Did she ask for a mistrial because of this? She did not ask for a mistrial. She's not required to ask for a mistrial. Our laws don't require her to do that. She complains about this problem twice to the judge. She tells the judge, my conversations with my client are not important. They're being broadcast to the public. That's a pretty serious problem. Well, wasn't, I mean, aren't you here asking for a mistrial? Isn't that the purpose of this appeal? I mean, the arguments you're making, you're attempting to make, chilling effect on the speech, chilling effect on consulting with your client to provide an adequate defense, et cetera, et cetera, however you want to capture it. Okay. Seems to me that you would stand up from the counsel table and ask for a mistrial immediately. I mean, counsel could have done that. She's not required to do that, though. She complains. I think there's something called effective assistance of counsel. I'm sorry, Your Honor? There's something called effective assistance of counsel. We've argued that to the extent the court finds this forfeited because counsel didn't speak clearly enough about this issue, yes, I would say that that is an effective assistance. I think she's said enough, though. When she complains the first day, it's a pretty serious problem she's complaining about, and the court doesn't get it. The second time she complains about it, all the court says is, well, we've warned them not to do this. They know they're not supposed to do this. You know, we've warned them. Let's move on. Did the judge fail to rule on some motion about this? The judge failed to stop the audio feed from... And what was requested from the judge? She clearly wanted the court to make this problem stop. Clearly? I think clearly. Your Honor, when she tells the judge, they're recording my conversations with my client, there's no purpose to tell the judge that if she doesn't want it to stop, and it's completely unclear why she would want that to continue. One of the problems, in addition to the forfeiture question, I mean, there's nothing specific about what happened. It's all conjecture and speculation about that something was, some trial strategy was prohibited, something was, her effective assistance was prevented because of something. What's there? I mean, what specifically is there? She needs to demonstrate that she was impeded, that her ability to communicate with her client was impeded, that her ability to do her job was impeded, that Jones' ability to confer with his attorneys was impeded. And when this came up for the motion for new trial, prosecutors didn't object. The prosecutors didn't argue, well, there's no impediment here. The prosecutors had nothing to say about it. There was no disputing, you know, counsel comes into court and says, I wasn't able to talk to him the way I would normally talk to a client when we're not being recorded and broadcast for the public. The prosecutor could have said, well, I don't buy that. I think you've got to show more than that. There's no questioning her statements. She comes in and says, I was impeded. If the prosecutor didn't believe it, the prosecutor could have said, well, I don't believe that. I think nothing shows that. She's impeded by her fears that these conversations are going to be recorded and broadcast. Those DVDs, particularly the DVD during the jury deliberation, shows that her fears were justified. She has to show an actual impediment. The impediment is this possibility that her private conversations, possibly incriminating conversations with the defendant, are going to become public. And it's not just a matter of the jury possibly hearing these conversations. It's a matter of the prosecutor hearing these conversations. When the prosecutor told the court, you know, it looks like the news feed is maybe staying live during these things. He was referring to something he'd seen earlier in the trial. So he's apparently watching this while it's happening. And he's not prohibited from doing that. Nor is he prohibited from using anything he learns from those conversations against the defendant at the trial. So the prejudice here, the thing counsel has to show, is that she's impeded. Are there private rooms they could have gone to? Things that could have been done? They had private rooms. I believe she indicated they had the ability to speak privately at the jail in the morning. Again, the primary problem is that this is happening during the trial itself. And I don't think counsel can interrupt the trial while it's happening, while witnesses are testifying, to ask the court to allow her client and her co-counsel to go to a private room. I mean, it would be really disruptive. During this whole time of the small talk, the jury wasn't even aware of that? I don't think there's any reason to think the jury was. But again, I don't think whether the jury heard anything is really the issue. Whether the jury hears it or doesn't hear it, counsel is justifiably concerned that this is being sent out to the public, possibly to the jury, possibly to the prosecutor, whatever it is, these are private, confidential conversations that are being beamed to the public inadvertently, despite the Supreme Court's prohibitions against it, despite the fact that the trial court had no question that this was not supposed to be happening. Nor did the Illinois Supreme Court personnel present. The defense counsel never mentioned one example of a confidential attorney-client conversation that was compromised? I don't think she has to reveal anything to the court in that way. She tells the court, I don't talk to my client. I mean, I think it would be a lot to ask the counsel that while the trial is going on, she's not only paying attention to the trial, what's being said by the witnesses, what is occurring there, but also making a list of things she wanted to talk about with Jones but couldn't because of this threat of being recorded and broadcast. How specific, relative to proving prejudice, how specific was she in saying to the judge, I can't consult with my client, and my client can't consult with me because of the risk of compromise because of this recording. Was she that specific? She was specific as to the conversation. I believe what she was trying to describe is when the problem first became apparent, the issue seemed to be that there was a lot of recording taking place during breaks, but maybe also during the trial. She tried to explain to the judge, hypothetically I think is how she put it because she didn't want to reveal anything, a witness might be testifying, a witness is saying something about maybe where the witness is, I don't know if she, it was something about where a witness might have been standing when the crimes occurred or something like that, and she would want to ask Jones what about this that this person is saying, do you have anything to say about that. So I think the idea is maybe I could have asked this person more questions during cross-examination and I would have been able to develop those questions had I been able to fully communicate with my client. So I think that is what she tries to explain to the court at one of the, I believe the first hearing on the motion for new trial before she had watched all the recordings. I'm fully sympathetic with the position that you're taking. The problem that I'm seeing for us is whether or not we can say that prejudice can be proven. And to me that turns on how specific she was in complaining to the court about the fact that the rules were clearly being violated and she was feeling like she was impeded in her ability to represent her client. I think if, we've analogized the issue here to the Stun Belt cases, you know in the Stun Belt cases you see and I believe at least the one case we cited in both of these, it was a federal case of Durham, you know the defendant isn't required in that case to show what exactly he wouldn't have been, what exactly he didn't talk about that he would have talked about had he not been concerned about the threat of 2,000-fold shock or whatever it was. And it's similar here, I mean it's to show she was impeded. The impediment, I mean the state acknowledges that there was a possibility that sensitive communications would have been recorded and broadcast. That's the impediment. Thank you. If nothing in the record supported that, if we didn't have this recording on the DVD showing the audio pickup sensitive enough to catch her whispering, we might say well counsel's fears are totally unfounded, not reasonable, and if she thought something she should have spoke up. Her fears were founded and justified. We have proof in the record that the thing she complained about was there. And again, as soon as she lets her guard down during jury deliberations right off the bat you get this whispering. And so counsel I think there's enough here to find. When she comes in and says I was actually impeded, this is how I was impeded, she tries to explain what kind of conversations that were initially recorded that she was concerned about, and that would be the type of thing down the road that she's not talking about. That's the idea. I mean I had these conversations before they were being recorded. I can't have these conversations now because I'm aware they're being recorded and I'm worried about this. And I think that's what counsel needed to show. And again, I think the Sunbelt cases are really on point here. The fact that there is a prohibition by the Supreme Court, isn't that just sufficient in and of itself? Why do you have to explain? The rule says you can't have this. There must be a purpose for the rule, am I correct? The purpose for the rule is to guard against this problem, among other things. The rules state nothing in the, we're going to have this program, but the judge still has the responsibility to ensure that the proceedings are fair. These things cannot interfere with the fairness of the proceedings. That's a particular concern in a criminal case. How is the rule drafted? What does it say exactly? It says no recording or broadcasting or other type of capturing of conversations. That isn't discretionary of the judge, is it? No. The judge cannot discretionarily allow that to happen. The same speaks for itself, doesn't it? What does the attorney have to say? The rule was violated. The rule is absolutely violated. But on top of that, there's no question the rule itself was violated. And on top of showing that it was violated, we've got her on the record saying I was actually impeded. The record elsewhere supports You're putting something on the rules for what has to be shown, don't you? I'm sorry? You're putting something on top of the rule. You're saying we've got the rule was violated. There's no argument about that. I mean, I think if the rule were violated, but counsel told the court nothing happened, and I talked anyway, and it just happened to not catch me somehow. So that's different than saying I have to show positively that I was not allowed to do something in my own mind or whatever because the rule was being violated. That's different than saying nothing happened. I wasn't. I'm not sure I understand that question. Well, I think you've been asked what's the burden? What is the burden on counsel when a rule is violated in the court? Is the burden to show anything? Is there a burden? I don't know if there is a burden. If there is, she met it. Because there's no dispute here. The rules were violated. Thank you, Your Honor. We just ask you to, again, reverse the defendant's conditions because it's referred to a fair trial. It's violated. Thank you. Thank you. Mr. Arado? Thank you, Mr. Court. Good afternoon, Your Honors. I would like to have my guest Elvin Gonzaga who's a student at Northern who's interested in going to law school. He's shadowing me today for the exciting career of public advocacy. Who's doing that? Elvin Gonzaga. How are you? Welcome to the court. I do not mention that for sympathy. Why should we be sympathetic? You need it? Your position needs it? I do not believe so, Your Honor. I believe the points are well taken. What happened in this case is that there was some audio pickup. The attorney apparently was reported to the judge initially and then the judge brought it to the attention of the attorneys and the attorney said, yeah, my assistant said that she heard something. Then the next day they come back and said, well, I think it still is. What's interesting to note is that counsel at the initial presentation of this said, I'm not asking for a mistrial. That clues me into the fact that she knows she can ask for one if during the course of the trial there is something going wrong that she is not able to communicate with the client. So is there a responsibility of her to do that? I think absolutely. To stand silent throughout the course of the trial and then at the end say, oh, by the way, did I mention I can't talk to my client? I forgot to mention that, sorry. I think that is just unfair. Yes, essentially. She did not at any point prior to the motion for a new trial say that she couldn't communicate with her client. That's different from what Mr. Klaus was telling us. He was saying that she complained to the court twice. She complained to the court twice that sound was being picked up of her conversations. That's different from saying I am inhibited from speaking to my client about trial strategy and the incriminating things that are being said. Relative to the question that Justice Holdridge asked, why should she have to say anything more than that? Because first of all, it's not an issue that was necessarily raised, but there is a question of mandatory versus directory. Is this a directory to the court? Second, discretion in the rules is granted to the trial judge to terminate the proceedings. I don't have the exact language because that part wasn't quoted by us. It's discretion by the trial judge whether to terminate the media proceedings. So there is discretion on the judge of whether or not when he's aware of these violations to terminate what's going on. So I think actually we address that in our use of discretion standard that is put in our standards of review in both of our cases when you're referring to the extended media. That discretion if you look at that language, he can terminate the coverage at any time. Provided that The question is, why would the judge declare a misdial if he's not aware that the client is being... Because the rule doesn't talk about that. It says there just won't be any of this. Right. And then he can terminate the media coverage. He can't declare it. There's nothing in the rules that say you can now declare a mistrial based on that. It's simply, you can terminate the media coverage. The request for a mistrial has to come both from the defense counsel and maybe even if he could do it  in violation of defendant's constitutional rights. Our second point in here, which at the end of the trial, they did a motion for a new trial. Counsel is told by the judge, okay, go through the 40 hours of hearings and give me a verbatim transcript of all the conversations that were heard. And she goes through and when she comes back she says, well there wasn't anything I could hear. In other words, she didn't give me a verbatim transcript which tells me a couple of things. First, she says there wasn't anything I heard about trial strategy. I didn't hear anything about the defendant making any incriminating statements. There must have been something said if there was going to be something picked up. In other words... Not necessarily. If she's saying that there were things I couldn't say to my client, there's not going to be a verbal transcript of what she didn't say. But what she said was there wasn't anything that I heard in the recordings. What does that mean? There would have been something she said to have been picked up, right? She would have had to have had, logically, in order to pick up something, there has to be something there to pick up. If she wasn't able to say anything about trial strategy, then what is she looking for when she was... What did she say she was prohibited from doing? It's not really clear. She says that, well when there were witnesses testifying, I might not be able to... Okay, what specifically? I mean, what specific instance of prejudice are you showing here? Now he's saying you don't have to... It's the mere fact that I couldn't talk to him. Well, actually, I think the standard is how would the result of the trial have been different? What strategy could you have used that would have changed the result of the trial had the violation allegedly not occurred? And, you know, there's a question of, you know, the attorney must be telling the truth. Well, there are different layers to this question. The first layer is the Supreme Court rule says this other thing's not supposed to be done, although we're taught by Thompson that they enumerate five or six things. It doesn't say that list is exhaustive, but the Supreme Court hasn't found anything else that is a second-pronged structural error. Correct. And we know that, for example, in that case, violating a Supreme Court rule wasn't a structural error. And so here you've got a violation of a Supreme Court rule. Correct. Pauling Thompson doesn't appear that would be a structural error to defeat a forfeiture claim. Correct. Now, another layer to this is one of the enumerated claims is your right to counsel. So one of the other factors was your right to counsel impaired. But in this case, there's nothing clear about what was impaired about your representation, anything. And I know that it said, well, there would be an impediment, but it doesn't come up until the very end. There's a mention that I think maybe things are being picked up, but this doesn't come until the end, and it's not very specific about what was in the motions afterwards. What was it that you were specifically prohibited from doing to show that a right to counsel, which is a structural error, would have been compromised? Correct. So when she specified, as Justice McDade has indicated, she can't talk about what she couldn't do. But at the new trial motion and so forth, she can say some examples of where you could, you know, it was impaired. My representation on this claim was impaired. None of this comes up until the end, and then nothing specific at that motion. Is that correct? That is absolutely correct. What's your understanding of the parameters of right to counsel? Well, you have the right to, well, there's the question about the booze type of situation, the stun belts. I mean, you have the right to communicate with your counsel during the course of trial, and of course counsel has to represent you effectively during the course of the trial. Let's go with communicate with your client. Is there anything attached to the nature of the communication with your client that is part of a right to counsel? I'm thinking of confidentiality. Confidentiality is, of course, attorney-client privilege applies. Now, one could argue in theory, if there's somebody sitting behind you at the counsel table, you know, in the audience, can you say, well, your honor, I think during the course of the trial, that person was overhearing what I was saying, and therefore I couldn't effectively represent my client. Would that automatically turn into reversal? Especially if you don't mention it until after the trial is over? Well, let's not go there. I mean, we know that fact. I'm just dealing with the concept. Because is this like overhearing, in the sense? I mean, isn't it really, or is it? No. Communications are privileged to the extent that there's nothing that would compromise the attorney-client relationship. In other words, saying something like, are you nervous? I'm not sure that qualifies as a communication that would be covered under attorney-client. But that's something that she said. What about the things she didn't say? And we don't know what she didn't say. What she claims she didn't say, because she didn't complain, but she couldn't say anything until after the trial was over. Okay, and she's an officer of the court, so maybe we can give her a break and assume that she's telling the truth? Well, except there's nothing in the recordings that indicate that, A, anything confidential was picked up, and B, that, again, prevented her from being able to communicate with the client. Does there have to be a showing that nothing that was confidential was picked up, or do you have to just show that a conversation was picked up? You have to show, well, see, this is a unique situation. Obviously, the first trial that ever addresses this. So I would suggest that if you have a situation that's having conversations picked up, you have a duty to inform the judge, and he can do one of two things. He can terminate the media coverage. Well, maybe three things. He can do what he did here, which at the second discussion, he said, okay, we're informing them, we're telling them that they can't do that. Is that right, Maria, or whoever the person was there? And, of course, the late, unfortunately, Joseph Thibor was there and doing his job, seeing this, because this was the first trial. So he was telling them, yes, we're making sure that this was done. If it was continually done after that point, I think you still have a duty to raise it and bring it to the attention. And that, you know, we have in the reply brief this first argument regarding ineffective assistance of counsel. At that point, now I have to truly show prejudice as to what occurred, and I don't think that there's anything that can be shown on this record as to what actually prejudiced the defendant. She never articulated anything specifically. Theoretically, in a PC, she might be able to present something, but at this record, certainly there's nothing that can relay that information to us. But following up on Justice Holbrook's question, you responded in talking about the rule, but for the purpose of argument, assume that a violation of this rule, a la Thompson, isn't a structural error, and so there's no forfeiture, because Thompson dealt with the Supreme Court rule, with very important principles as error factors, and they said that wasn't a violation. So it's not the rule that's the problem, then there are two aspects to the attorney-client privilege. And the attorney has the right to have representation. That is a structural error. So there are two aspects of that. Is there any proof that that was violated specifically in anything that was recorded? No. Okay. So the answer to that is there was nothing specifically showing any of that. And the second question is the more difficult one, raised by Justice McDave and Justice Oakridge, is what was not asked, not said between the attorney and the client as far as being able to have representation because of this factor. And how do you have to, how much do you have to say to say that became a structural error? Do you have to make some showing or just say that just the attorney saying that it was an impediment is enough, or do you have to show that there were some things that you would have done that you were prevented from doing because they were picking up the conversations? I mean, isn't that part of what we're trying to, is like, where are the standards in this thing? In other words, is a preliminary showing, a prima facie showing that, look, there's recordings going on, and obviously per se that's an impediment. Or is it that you've got to say, I was going to specifically ask certain things and I couldn't do it during the trial. And then there's the other factor, you don't mention this until the trial's over and all that, and all of a sudden now you're raising it for the first time as far as the forfeiture argument. So this is a many colored factors with these things because we're not really just talking about the Supreme Court rule. We're talking about a fundamental right to counsel. So when you claim, in normal circumstances, when you're not dealing with taping, what are the parameters of the rules to say that even though I was appointed an attorney, I couldn't really function, there wasn't a proper functioning of a right to an attorney because of certain other factors that prevented that. What's the cases like that? Besides, this is the first time the taping comes up. Isn't there a need to have a showing or not? Here I was prevented from doing this. Prevented from doing that. Thank you. I guess the response is going to have to be that when you have a situation where an attorney sits on a claim that could have been brought to the attention of a trial judge and then says, my claim was denied in effective assistance of counsel. I think that there should be a showing that explains exactly what it is that was prevented. Because if you're just going on a prima facie showing, well, I swear on this Bible that I was interfered with, and they say, how were you interfered with? And they say, I was just interfered with. That's not good enough. It never should have gotten to this point. When she complained the first time, the trial court should have said to the people who are taping, look, you're here on sufferance. You either follow the rule or you leave. And he didn't do that. And now as a result of that we've got some burden put on the defendant's attorney to do something that, to a certain extent, it's impossible for her to do. Because she could say to the judge what it is that she didn't say because of the awareness of the fact that they were taping. How is she going to say what her client would have said to her if they weren't aware of the taping picking up what they were saying? The judge did not have any discretion to allow them to go to operate during recesses and to use a sensitive pickup that could get what they were saying. My reading of the record is that the trial judge that supposedly the recess issue was ordered not to occur, he told them they're informed not to do that. So as far as he was concerned, unless he was told otherwise, he addressed that issue. So as far as the discretion of terminating, unless he's informed again that there's a problem, how does he know? He doesn't know. How can he terminate if he's not informed of it? Did he double check? Well, now you're putting the burden on the trial judge, which isn't necessarily in the rules. Now there's a reporting requirement after the trial about any problems that occurred. But there's nothing in there that says during the course of the trial you must monitor everything to ensure that. The rule doesn't have a requirement that you have to constantly monitor. Yeah, I mean, it says what it says, but again, if you're ignorant, how can you resolve it? It's like any other claim that's brought up under plain error or harmless error or whatever. If the judge is not aware of the problem, how can he solve it? That's the point of requiring whoever the party is bring it to the judge's attention so they can solve the situation. And I would suggest if you look at the second set of discussions regarding this, the judge said, okay, they've been told not to do this anymore, and that resolved it as far as he was concerned, and that was it for the rest of the trial. Do you think that's enough? Yes, I think that's enough. Is he supposed to have the monitor on the TV? If I may respond, is he supposed to have the monitor on there and listen in between the witnesses to make sure that that's going on? I mean, I don't, there's nothing that suggests that that's on the burden. This is really a unique set of circumstances brought upon by the new technologies that we're all suffering under. Well, it's brought upon not by the new technologies but by a policy that allows it in places perhaps new technologies shouldn't be. Well, we can appeal to the, or ask the Supreme Court to address that, but I suppose that's a shift that's going on. They did address it by passing the rule. Well, right. It's a question of wisdom. If there are no other We'll stand up, if I may, stand on the brief for the remaining issues, and otherwise ask that this Court affirm. Thank you. Thank you, Mr. Arado. Mr. Klatos? Can I ask you a question before you start? Of course. How many times did the attorney talk to the judge to complain about the recordings? It's gotten fudged in the discussion. On the record, we have first, as counsel pointed out, the first day the judge receives a note saying this is happening from a defense counsel's employee or her office. The next morning, defense counsel, or the judge asks defense counsel, do we want to talk about this? And defense counsel says, yeah, I guess they're recording. I'm sorry. I have a hard time understanding this. It's been all week. I know. I apologize again for that, Your Honor. So the next morning after the court... Second day of trial. This is, I believe, the morning of the third day. I think the court receives the note the end of the second day, and the parties discuss the note on the record the first thing the next morning. When the counsels show up. I'm sorry? When the counsels show up. In other words, the judges are made aware of it after the second day is over. And then when everybody shows up on the third day, that's the first discussion. Yes, that is the first time they talk about it on the record. And that is when the court heard what counsel had to say. Said, okay, I don't think it's anything. The jury isn't present for these conversations, and they're not supposed to be watching it anyway. So that's that. The next morning, counsel comes back again, and that's when counsel says, you know, I'm pressing this button. I don't know what's going on. Maybe it's my fault, but they're still recording stuff. They're still broadcasting stuff. Or they're definitely still picking things up that are going on between me and my client. And the judge says, well, you know, they've been warned. And the representative from the Supreme Court's office also indicated, yeah, the media has been told not to do this. And again, there's no question here. There's just no question that they're not supposed to be recording any of these things during the breaks, during trial. These conversations are sacred. They're not supposed to be. This is the rule, so don't tell us about the rule. Okay, so that's the, that again, that's the third time. So the note, next morning, conversation, morning after, there's another longer conversation. And the judge at that point says, well, they've been warned. He might say, no, I guess we'll warn them again. The prosecutor indicates this is happening during the news feed, or it was happening during the news feed two days ago. And didn't question whether it was still happening. And so those were the times during trial. I think what's really important to stress is the threat here is obvious. I mean, defense counsel tells the court, I'm having these conversations that everyone agrees are confidential. Whatever's going on, while we're talking, attorney-client here, no one is supposed to be hearing these things. Certainly not the viewing public. This is not supposed to be broadcast. These rules are here for that purpose. And so when she tells the judge, this is happening, the threat to her ability to talk to her client and to co-counsel is blatant. There isn't anything to really, I mean, it doesn't require a whole lot of thought to realize, oh, that would totally interfere with their ability, with her ability to do her job, with her co-counsel's ability to do his job, and with the defendant's ability to speak to his attorneys privately. This is one of the reasons I relied on the Georgia appellate case in the opening and reply briefs. Fifty years ago, we had a court posed with this same situation, and there's no question for this court. We've got a radio station with a microphone near a defense counsel's table. Obviously, that's a problem. And I acknowledge that the defense attorney in that case said more about it than my client's trial attorney. But it doesn't require a lot when you tell the court our private conversations are being recorded and broadcast. That isn't, I mean. But your argument is that it's a per se presumption. That's what you're saying. I don't know if it's a presumption. I mean, if this were a case where nothing else in the record indicated counsel's fears were reasonable or justified, that would be one thing. But that isn't this case. I mean, she tells the court twice on the record. The court determines all that has to be done is we'll warn them again, as we've previously warned them to stop doing this thing that they keep doing despite the clear prohibition and despite our warnings. So I think it's enough here that counsel tells the court there's no question this was happening. So really, factually, on the record, the only thing that we do know is that it did occur on two occasions? These two occasions is when she raised it, when she talked about it with the court. But is there anything to suggest that it wasn't terminated? That there was, after that second discussion, there was no further feeds? Oh, absolutely. That's what the chatter during the jury deliberation shows, is that this problem wasn't solved. Counsel tells the court, again, there's no reason to think she's not telling the truth. The prosecutor didn't indicate that he or her employees affidavit to the court. The record demonstrates that we're dealing with a mic that's sensitive enough to capture them whispering. It's on the record. There's no disputing that. She was concerned that would happen. It did happen. After the second discussion with the court? Yes. So we have evidence that it continued thereafter? Oh, absolutely. Do we have evidence that there was an awareness by her it was continuing thereafter? She told the court she was aware of this problem during the hearings on the motion. Throughout the remainder of the trial? She told the court, I was aware of this problem from the time the court received the note. Her employees affidavit indicated that the problem continued throughout trial on the live stream, which is a separate thing in this case, but there apparently was a live stream that was broadcasting everything. It wasn't an edited version for television. It was just everything going out as it happened. Thank you, Your Honors. Thank you. We thank both of you for a really interesting argument this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess until the panel changes.